IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER GREEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case Number CIV-04-1121-C |
| ) | |
| BOARD OF COUNTY ) | |
| COMMISSIONERS, CANADIAN ) | |
| COUNTY, STATE OF OKLAHOMA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff filed the present action asserting violations of her First Amendment right of freedom of speech, termination in retaliation for filing a workers' compensation claim, and/or termination in violation of Oklahoma's public policy. Plaintiff was employed as a Drug Lab Technician. During the course of her employment, Plaintiff became concerned that certain test results showing drug use were due to false positives and that Defendants had no policy for ensuring the tests were properly confirmed. Ultimately Plaintiff, without the approval of her supervisors, arranged to have a client who had tested positive retested at another facility. That test demonstrated the analysis performed at the lab where Plaintiff worked had provided a false positive. According to Plaintiff, Defendants were very angry as a result of her actions.

Some time after Plaintiff's "speech,"[1] changes were made to her lab due to construction. As a result of the changes, Plaintiff's job became more difficult. Plaintiff argues that in retaliation for her "speech," Defendants refused to consider her requests to modify the lab to ease the difficulty. Plaintiff argues she eventually suffered an on-the-job injury as a result of having to open and close the heavy doors. According to Plaintiff, Defendants, in retaliation, removed her from the lab and offered her a position they knew she could not accept. After receiving a release from her doctor, Plaintiff asserts she did not return to work because the only position offered by Defendants was unworkable.

Defendant filed a summary judgment motion which the Court granted on September 7, 2005. Plaintiff appealed, and the Tenth Circuit affirmed in part and reversed in part. See Green v. Bd. of County Comm'rs, Canadian County, 472 F.3d 794 (10th Cir. 2007). The Circuit affirmed the grant of judgment on Plaintiff's First Amendment speech claims, but reversed summary judgment on the workers' compensation retaliation claim and public policy claims.

With leave of Court, Defendant has filed a second Motion for Summary Judgment asserting the undisputed facts demonstrate that Plaintiff cannot establish she was terminated in retaliation for filing a workers' compensation claim; that she has failed to identify a valid

---

[1] Plaintiff argued her actions in arranging for the confirmation test were protected by the First Amendment. As noted below, the Court granted Defendant judgment on this claim, which was affirmed by the Tenth Circuit.

public policy which would give rise to a wrongful termination claim, and that her request for punitive damages against Defendant cannot stand as a matter of law.

## **STANDARD OF REVIEW**

Summary judgment is appropriate if the pleadings and affidavits show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[A] motion for summary judgment should be granted only when the moving party has established the absence of any genuine issue as to a material fact." Mustang Fuel Corp. v. Youngstown Sheet & Tube Co., 561 F.2d 202, 204 (10th Cir. 1977). The movant bears the initial burden of demonstrating the absence of material fact requiring judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). A fact is material if it is essential to the proper disposition of the claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If the movant carries this initial burden, the nonmovant must then set forth "specific facts" outside the pleadings and admissible into evidence which would convince a rational trier of fact to find for the nonmovant. Fed. R. Civ. P. 56(e). These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Celotex, 477 U.S. at 324. Such evidentiary materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). "The burden is not an onerous one for the nonmoving party in each case, but does not at any point shift from the nonmovant to the district court." Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 672 (10th Cir. 1998). All facts and reasonable inferences therefrom are construed

in the light most favorable to the nonmoving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## **DISCUSSION**

Initially, the Court considers Defendant's argument that the Court should decline to exercise supplemental jurisdiction in this matter as the federal claim has been dismissed. Defendant notes the Circuit was concerned with a possible statute of limitations issue but argues Oklahoma law makes clear that is not a problem.  While it may be permissible for the Court to decline jurisdiction, considering the expenditure of time and effort by the parties in bringing this matter to the eve of trial in this Court, the Court finds issues of judicial economy weigh heavily in retaining jurisdiction.  Accordingly, Defendant's request for dismissal will be denied.

A.  Workers' Compensation Retaliation

According to Plaintiff, when the lab was moved due to construction, she was forced to open and close seven or eight heavy doors approximately sixty times per day on her way to and from her lab.  Plaintiff asserts that as a result her shoulder was injured.  Plaintiff pursued her rights under Oklahoma's Workers' Compensation statutes, 85 Okla. Stat. § 1 et seq.  According to Plaintiff, Defendant constructively discharged her in retaliation for filing a workers' compensation claim.  In the earlier Order, the Court found that Plaintiff had failed to demonstrate that her injury or filing a workers' compensation claim was a substantial motivating factor in her termination.  On appeal, the Tenth Circuit held that a reasonable jury

could find that Plaintiff's termination was the goal of Defendant when Plaintiff was transferred to a shift it was known she could not work.

Defendant argues the Tenth Circuit's position ignores Oklahoma precedent. According to Defendant, the factual question noted by the Circuit only creates an inference that the transfer was a means to get rid of Plaintiff. However, Defendant argues, the factual question does nothing to create an inference that the desire to get rid of Plaintiff was motivated by retaliation against Plaintiff for filing a workers' compensation claim. Thus, Defendant argues it is entitled to summary judgment on the issue. Defendant also argues that in any event, the ultimate reason Plaintiff was fired was because she failed to return to work when she was scheduled.

Viewed in the light most favorable to Plaintiff, the evidence demonstrates that Defendant transferred Plaintiff to a shift it knew she was unable to work because of child care issues. Thus, a reasonable jury could find that Defendant transferred Plaintiff to the shift as a means of forcing her to quit. As the Circuit noted, Oklahoma recognizes the theory of constructive discharge in workers' compensation retaliation cases. Green, 472 F.3d at 802 (citing Wilson v. Hess-Sweitzer & Brant, Inc., 1993 OK 156, 864 P.2d 1279, 1284; Buchanan v. Sherrill, 51 F.3d 227, 229 (10th Cir. 1995)). Thus, a reasonable jury could find the fact that Plaintiff failed to return to work was due to Defendant's retaliation. Defendant's arguments regarding its motivation in transferring Plaintiff are inappropriate for resolution at the summary judgment stage. See McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998) ("Summary judgment is not ordinarily appropriate for settling issues

of intent or motivation.") (citing Setliff v. Mem'l Hosp. of Sheridan County, 850 F.2d 1384, 1394 n.12 (10th Cir. 1988)). Accordingly, Defendant's motion will be denied as to Plaintiff's workers' compensation retaliation claim.

B. Public Policy Claim

Plaintiff argues that her termination was improper and in violation of Oklahoma's public policy and therefore she is entitled to recover as set forth in Burk v. K-Mart Corp., 1989 OK 22, 770 P.2d 24. According to Plaintiff, her actions in assuring a confirmation test were an effort to protect the public policy of protecting the health, well being, and welfare of a child as outlined in the Oklahoma Children's Code, 10 Okla. Stat. § 7001-1.1 et seq. Specifically, Plaintiff asserts that in seeking the confirmation test she was motivated by the policy interests of the Children's Code, to preserve, unify, and strengthen the child's family ties for the health and safety of the child.

In response, Defendant argues Plaintiff has failed to identify an actionable public policy.[2] According to Defendant, the Oklahoma Supreme Court has made clear that before a statute can provide an actionable public policy, that statute must touch on the employer-employee relationship. Defendant argues that Plaintiff's reliance on the Oklahoma Children's Code is ineffective because that statute had no bearing on Plaintiff's employment relationship with Defendant. In support of its argument, Defendant directs the Court to

---

[2] To the extent Defendant argues the Tenth Circuit overlooked or misapplied Clinton v. State ex rel. Logan County Election Bd., 2001 OK 52, 29 P.3d 543, Defendant's argument must be addressed to the Circuit as this Court is powerless to reverse a decision of that court.

Pearson v. Hope Lumber & Supply Co., Inc., 1991 OK 112, 820 P.2d 443, and Shero v. Grand Savings Bank, 2007 OK 24, --- P.3d ---, 2007 WL 1128885.[3] In Pearson, the plaintiff refused to undergo a polygraph test and was terminated. In pursuing a wrongful termination suit, the plaintiff argued the Polygraph Examiner's Act, 59 Okla. Stat. §§ 1451-76, set forth a public policy which was violated by his termination. Rejecting that claim, the Oklahoma Supreme Court found the Act did not touch on any aspect of the employment relationship and thus could not create a public policy.

In Shero, the plaintiff had brought claims against a third party pursuant to the Oklahoma Open Records Act, 51 Okla. Stat. § 24A.1 et seq. The plaintiff's employer told him to drop the lawsuit or be terminated. Plaintiff refused and was terminated. He then sued alleging the termination violated Oklahoma's public policy. Rejecting the plaintiff's claim, the Shero court relied on Pearson and noted the Open Records Act did not "purport to touch any aspect of the employment relationship." Shero, 2007 OK 24, ¶ 11, 2007 WL 1128885 at *4. The Oklahoma Supreme Court further noted that the plaintiff was "not ordered to perform an illegal act or denied an opportunity to exercise his legal rights . . . ." Id.

In each case, the Oklahoma Supreme Court noted its decision was premised on the requirement that "in light of the vague meaning of the term public policy" any exception to the employment-at-will rule must be "tightly circumscribed." Burk, 1989 OK 22, ¶ 18, 770

---

[3] Although Shero has not yet been released for publication, the decision regarding the relationship of the asserted public policy and the employment relationship was based on Pearson. Consequently, Shero is at a minimum strongly persuasive.

P.2d at 28-29. A review of Oklahoma case law on the subject reveals strict adherence to the rule of allowing the exception only in a narrow class of cases.

Plaintiff agrees Defendant has correctly recited the holding Pearson and Shero, but argues there are other Oklahoma cases where a public policy was found in a statute which had no bearing on the employment relationship. However, upon close review, the case law on which Plaintiff relies is not helpful to her position.

First, Gabler v. Holder & Smith, Inc., 2000 OK CIV APP 107, 11 P.3d 1269, was released for publication only by the Oklahoma Court of Appeals. Thus it has no precedential value. See 20 Okla. Stat. § 30.5. In any event, the statutes relied on to state the public policy in Gabler were criminal statutes, and thus within the category of statutes recognized as potentially providing a public policy. See Shero, 2007 OK 24, ¶ 11, *4 (noting an employee ordered to perform an illegal act or denied an opportunity to exercise a legal right may state a public policy claim).

Plaintiff's reliance on Hayes v. Eateries, Inc., 1995 OK 108, 905 P.2d 778, and Gilmore v. Enogex, 1994 OK 76, 878 P.2d 360, is likewise unpersuasive. In Hayes, although the Oklahoma court did not rely on the Pearson rule, it did find the plaintiff had failed to state a valid public policy. The Hayes court noted that the plaintiff was not seeking to vindicate his own legal rights or interest nor seeking to expose a public wrong for the benefit of the general public. Thus, the reasoning employed is consistent with that employed by Pearson and Shero. In Gilmore, the plaintiff was terminated for refusing to take a drug test and sued, arguing his termination violated public policy because it interfered with his right to privacy.

The Oklahoma Supreme Court rejected the claim, stating no public policy existed which would prevent an employer from terminating an employee for refusing to participate in a mandatory drug testing program. The fact that the Oklahoma court did not mention <u>Pearson</u> in finding no public policy existed does not make its decision contrary to the <u>Pearson/Shero</u> rule.

Finally, Plaintiff relies on <u>Silver v. CPC-Sherwood Manor, Inc.</u>, 2004 OK 1, 84 P.3d 728. While this case appears at first blush to be supportive, under closer analysis it is consistent with the other cases and offers no help to Plaintiff. The plaintiff in <u>Silver</u> was a cook for a nursing home. He told his supervisor that he was sick and had to leave. The supervisor allegedly told the plaintiff if he left he would be fired. Indeed, when the plaintiff left, his employment was terminated. The plaintiff sued, arguing the termination violated Oklahoma's public policy. In finding the plaintiff had stated a claim for relief, the Oklahoma Supreme Court relied on parts of Oklahoma's public health code which prohibited the delivery of adulterated food and defined adulterated as food prepared under insanitary conditions. The Oklahoma Supreme Court noted the public health code provided a valid public policy. While the stated public policy did not touch on the plaintiff's employment relationship, it did touch on a matter of importance to the general public. Thus, it was within the scope of public policy issues recognized by the <u>Hayes</u> court as actionable. <u>Hayes</u>, 1995 OK 108, ¶ 24, 905 P.2d at 786:

> an employee, in reporting such a crime committed by a co-employee against the interest of his employer to outside law enforcement officials is not seeking to vindicate a public wrong where the victim of the crime could in any real or

>  direct sense be said to be the general public, as where crimes or violations of health or safety laws are involved.

Here, while Plaintiff's actions could be said to be morally correct, there is no evidence they were done to vindicate a personal legal right or interest or the rights or interest of the general public. Consequently, the Court finds as a matter of law that Plaintiff has failed to state a valid public policy. Accordingly, Defendant is entitled to judgment on this claim.

C.  Punitive Damages

Defendant argues that to the extent Plaintiff seeks punitive damages, her claim is barred by 51 Okla. Stat. § 154(C) which prohibits an award of punitive damages in a claim brought pursuant to the Oklahoma Tort Claims Act. Plaintiff offers no argument in response. As Defendant correctly notes, the cited statute explicitly bars any award of punitive damages in a claim against the state or a political subdivision. Accordingly, Plaintiff's request for punitive damages will be dismissed.

## CONCLUSION

As set forth more fully herein, questions of material fact remain regarding the motivation for the transfer of Plaintiff to a position she could not work. Accordingly, Defendant's request for judgment on Plaintiff's workers' compensation retaliation claim will be denied. Because Plaintiff has failed to state an actionable public policy, Defendant's request for judgment on the public policy claim will be granted. Finally, Oklahoma law prohibits an award of punitive damages in this matter. Accordingly, Plaintiff's claim for punitive damages will be dismissed.

For the above reasons, Defendant Board of Commissioners for Canadian County's Motion for Summary Judgment (Dkt. No. 110) is GRANTED in part and DENIED in part. A separate judgment will issue at the close of these proceedings.

IT IS SO ORDERED this 13th day of June, 2007.

*/s/ Robin J. Cauthron*
ROBIN J. CAUTHRON
United States District Judge